## SUPREME COURT.

GEORGE L. FRANCE, late sheriff of Greene county agt. DAVID
M. HAMILTON, JOHN SMITH, HENRY G. BEDELL, ISAAC
BROWN, ALEXANDER REED and WHEELER POWELL.

The statutes of this state, requiring *county clerks* to keep open their respective
offices during *certain hours each day* for the transaction of business, were intended,
not only to compel the clerks to be at their offices during those hours, but to pre-
scribe *rules and regulations which should control the office where the business
was transacted.*

Therefore, *all judgments filed and docketed by a clerk out of office hours,* although
some may be entered before others, must take effect and become liens *equally
at the next office hour after such docketing.*

This rule does not apply to *executions delivered to sheriffs ;* for business with sheriffs
may be transacted *at other places besides their offices, and outside of office hours.*

*Albany General Term, December,* 1862.

HOGEBOOM, PECKHAM and MILLER, *Justices.*

CASE agreed upon by parties, and submitted pursuant to
section 372 of the Code.

The Bank of Coxsackie recovered a judgment in the
supreme court, against Charles Painter and others, for five
hundred and twenty-eight dollars and ninety-eight cents
damages and costs, which was entered and docketed in the
office of the clerk of the said county of Greene, on the 14th
day of August, 1861.

The above named David M. Hamilton and John Smith
being at the time copartners in business, and, as such co-
partners, recovered a judgment in said supreme court,
against the said Charles Painter, by confession, for one
thousand and thirty-three dollars and twenty-nine cents
damages and costs, which judgment was entered and dock-
eted in the office of the clerk of the said county of Greene,
on the 16th day of August, 1861, at eight o'clock in the
afternoon.

David E. Wing recovered a judgment in the said supremo
court, against the said Charles Painter, by confession, for

five hundred and seven dollars and five cents, damages and costs, which judgment was entered and docketed in the office of the clerk of the said county of Greene, on the 16th day of August, 1861, at nine o'clock in the afternoon. The said Wing, on the 1st day of September, 1861, sold, assigned and transferred said judgment last mentioned to the above named Henry G. Bedell, who has since owned the same.

The above named Isaac Brown recovered a judgment in the said supreme court, against the said Charles Painter, by confession, for eight hundred and nineteen dollars and ninety-three cents, damages and costs, which judgment was entered and docketed in the office of the clerk of said county of Greene, on the 16th day of August, 1861, at fifteen minutes past eleven o'clock in the afternoon.

The above named Alexander Reed and Wheeler Powell, being at the time copartners in business, and, as such copartners, recovered a judgment in the said supreme court, against the above named Charles Painter, by confession, for one thousand and thirty-two dollars and nineteen cents, damages and costs, which judgment was entered and docketed in the office of the clerk of the said county of Greene, on the 16th day of August, 1861, at fifteen minutes past eleven o'clock in the afterenoon.

The above named George L. France was sheriff of the said county of Greene from the first day of January, 1859, to the first day of January, 1862, and during the same time Peter Cook was a duly appointed and acting deputy sheriff under said France.

Executions against the property of the said Charles Painter were duly issued on each of the above judgments, and delivered to the said sheriff of the county of Greene, as follows : On said judgment in favor of the Bank of Coxsackie, August 16th, 1861, at 10 o'clock P. M. ; on the said judgment in favor of David M. Hamilton and John Smith, August 17th, 1861, at 7 o'clock A. M. ; on said judgment in

favor of David E. Wing, September 14th, 1861, at 1 o'clock
P. M. ; on the said judgment in favor of Isaac Brown, August
17th, 1861, at a quarter past seven o'clock A. M.; on the
said judgment in favor of Alexander Reed and Wheeler
Powell, August 17th, 1861, at eighteen minutes past seven
o'clock A. M. That said executions were received and exe-
cuted by said sheriff, by and through his said deputy, Peter
Cook. That by virtue of said judgments and executions,
the real estate of the said Charles Painter, situate in the
towns of New Baltimore and Coxsackie, in the said county
of Greene, and on which the aforesaid judgments were a
lien, was duly sold for the sum of $2,294.25, on the 3d day
of December, 1861, and after paying the balance due on
the above described judgment in favor of the Bank of Cox-
sackie, and the costs and disbursements of the sale, includ-
ing the poundage of the sheriff, there remained in the hands
of the said sheriff the sum of $1,754.05, of which sum the
said sheriff, by his said deputy, paid to David M. Hamilton
and John Smith, on the 18th day of December, 1861, to be
applied on their said judgment, the sum of $1,056.80, should
they be legally entitled to the same, and to Henry G.
Bedell, on the 18th day of December, 1861, to be applied
on the said judgment in favor of David E. Wing, the sum
of $518.36, if the said Henry G. Bedell should be legally
entitled to the same ; and the balance of said sum, being
$178.69, remains in the hands of said sheriff.

Questions of difference have arisen between the parties
as to their respective rights in and to the said sum of
$1,754.05. The said David M. Hamilton and John Smith,
and the said Henry G. Bedell, owner of the David E. Wing
judgment, claim that they are entitled to payment of their
judgments in full, because their judgments were first dock-
eted in the office of the clerk of the county of Greene, and
therefore their liens on the real estate were the oldest ;
and the said Isaac Brown and the said Alexander Reed
and Wheeler Powell claim that the four judgments above

described, of David M. Hamilton and John Smith, David E. Wing, Isaac Brown, and Alexander Reed and Wheeler Powell, against said Painter, are each entitled to a *pro rata* share of the said $1,754.05, for the reason that all of said judgments were docketed after five o'clock P. M. of August 16th, and before 9 o'clock A. M. of August 17th, 1861, and that the docketing of neither of said judgments took effect until 9 o'clock A. M. of August 17th, 1861.

The parties ask the decision and judgment of this court as to the legal rights of said parties respectively to the said sum of $1,754.05, and also as to the costs of this proceeding.

A. J. PARKER, *for Brown, Reed and Powell.*
L. TREMAIN, *for Hamilton and others.*

By the court, MILLER, Justice. The question raised in this case involves the construction of the provisions of the Revised Statutes in reference to the time required for the docketing of judgments.

Second Revised Statutes, 285, section 54, as amended by Session Laws of 1860, chapter 276, provides that clerks of counties and of courts of record in this state, and the register of deeds in the city and county of New York, shall respectively keep open their several offices, for the *transaction of public business,* every day in the year, except Sundays and such other days as are and shall be declared by law to be holidays, in the city of New York, from nine o'clock in the forenoon to four o'clock in the afternoon, and in each of the other counties of the state, between the thirty-first day of March and the first day of October, from eight o'clock in the forenoon to six o'clock in the afternoon, and between the thirtieth day of September and the first day of April, from nine o'clock in the forenoon to five o'clock in the afternoon.

There are but two reported cases in this state which have any bearing upon the precise point now considered.

In *Simon* agt. *Staats* (1 *Cow.* 592), where all the judgments were docketed before nine o'clock A. M., it was decided that among several judgments, that in which the record is first filed takes preference. And to determine this, the court will inquire into the fractional parts of a day. The case was decided in 1823, and before office hours were fixed by statute, and can therefore scarcely be regarded as decisive upon a question arising under a statute since enacted.

In *Warden* agt. *Mason* (10 *W. R.* 573), the question appears to have been raised and considered. The court, SUTHERLAND, J., presiding, observed, " that a party cannot gain a preference by filing a record *before the hour of nine o'clock in the morning*, that being the earliest hour at which the clerks of our court are required by statute to open their offices for the transaction of business, and that all records delivered at an earlier hour must be considered *as filed at the hour of nine.*" The case is not very fully reported, but sufficient appears to show that the point was under consideration.

The ninth rule of the supreme court makes provision that judgments shall only be entered and docketed in the offices of the clerks of the several counties, within the hours during which by law they are required to keep open their offices for the transaction of business. It would appear that the court designed by this rule to carry out the provisions of the Revised Statutes in the practice. I am also inclined to think that the authorities cited above tend to establish that all judgments docketed out of office hours must be considered as docketed within the office hours prescribed by the statute.

It is insisted, however, by the counsel for the judgment creditors, whose judgments were docketed out of office hours, that they became a lien the moment they were dock-

eted in the county clerk's office, according to the express provisions of the statute (*Code*, § 282; 2 *R. S.* 359, §§ 4, 5 [*3d ed.* 3 *R. S.* 637]; 2 *R. S. p.* 360, §§ 14, 15); that the provision first cited has no bearing on the question, and though mandatory as to these hours, it does not prohibit a clerk from keeping his office open at other hours. The object of the statute was doubtless in part to compel the clerks of the counties to be at their offices during certain hours of the day for the transaction of business; but I am of the opinion that it was also designed to go a little beyond this, by prescribing *rules and regulations which should regulate and control the office where the business was transacted.* The record must be filed and the judgment docketed at the office; and there is certainly great propriety in making provisions as to the time within which the daily business should be done. Were it otherwise, it would to some extent vest a county clerk with power to determine the priority of liens. As there is no compulsory provision for the transaction of business beyond the hours fixed by law, he might docket judgments for some and refuse to do it for others; thus exercising a discretion dangerous to be intrusted, and liable to be abused. All this could be done with impunity, as it would be no good cause or legal ground of complaint that he declined to open his office for the transaction of business outside of office hours. I think that this provision of the statute was intended to remedy such a difficulty, and to place safeguards around the office and the officer so as to prevent abuse. If the intention was to give the clerk a discretionary power in this respect, the statute should have further provided that the clerk should be at liberty to open the office for the transaction of business at any other time he thought proper to do so. The failure to give such a power must be regarded as somewhat important.

It is said that the next section (2 *R. S.* 285, § 55, *5th ed. vol.* 3, *p.* 475), requiring sheriffs to keep open their

offices during the same hours, does not postpone the lien of an execution levied or received after those hours. It appears to me that it is a complete answer to this point to say, that it is not necessary that an execution should be received or levied at the office ; whereas no records are in force until delivered and filed in the county clerk's office. It is also observable that the phraseology of the last section is somewhat different from the previous one. The words " for the transaction of business" are omitted ; thus very properly conceding what is well understood, that business with the sheriff may be transacted at other places besides the office, and outside of office hours. The use of the language employed in the one section, and its omission in the other, is of singular significance, and clearly indicates that the legislature intended to make a difference. If they only meant to fix the hours when the clerk should keep open the office, the omission would have carried out such intention. They did so as to the sheriff, where the place of business was not important ; and I think, in making an express provision for the transaction of business on certain days and within certain hours, they intended to say that business should be done at no other time.

I am better satisfied with this construction, because there is an eminent appropriateness in having some established rules in reference to a matter of so much consequence. The policy of the statute was to prevent any uncertainty ; and the interest of creditors demands that rights so important should not be left to the discretion or judgment of a public officer who is not made accountable for an error in this particular. By the interpretation given, there is no chance of abuse ; vigilant creditors stand upon precisely the same footing, and no advantage can be derived except what each one is fairly entitled to and the law gives. Such, no doubt, was the intention of the legislature.

The judgments must be considered as docketed at the

same time, and judgment rendered that the plaintiffs Hamilton and Wing restore the money to the sheriff, and that the sheriff divide it, together with the sum of $178.62 remaining in his hands, among all the judgments unpaid, *pro rata.* As the question is a new one, the costs of the parties should be paid out of the fund.